**UNITED STATES of America, Plaintiff,**

**v.**

**BOARD OF EDUCATION OF the CONSOLIDATED HIGH SCHOOL DISTRICT 230, PALOS HILLS, ILLINOIS; and Illinois Education Association, Consolidated High School District 230 Teachers' Association, Defendants.**

**No. 88 C 3113.**

United States District Court, N.D. Illinois, E.D.

June 27, 1990.

---

See also 761 F.Supp. 524.

Gail C. Ginsberg, U.S. Attorney's Office, Chicago, Ill., for the U.S.

Gary Kostow, Diane M. Baron, Jeanette Marie Bourey, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for Bd. of Educ. of Cons. High School Dist. 230.

Gregory John Malovance, Winston & Strawn, Jane Clark Casey, Chicago, Ill., for Illinois Educ. Ass'n.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

The defendant, Board of Education of the Consolidated High School District 230 ("District 230"), has for a number of years entered into collective bargaining agreements ("CBA") with the defendant, Illinois Education Association, Consolidated High School District 230 Teachers' Association ("Association"). Among the subjects covered by the CBAs was maternity leave, sick leave, child care leave and several other forms of leave. As with the other provisions of the CBA the various leave policies resulted from labor negotiations between District 230 and the Association. The two CBAs in question, for the years 1982–84 and for the years 1984–87, provided that sick leave, which was paid, could not be taken "in conjunction with" maternity leave, which was unpaid. None of the other leaves provided by the CBA were subject to a similar provision. Also the provisions of the CBA establishing a sick leave bank specifically excluded maternity benefits.

As a result of what it perceived to be discrimination against pregnant teachers, the United States brought this Title VII disparate treatment action alleging viola-

tions of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PPD").

## THE MATERNITY LEAVE PROBLEM

 District 230 argues that it does not discriminate against pregnant teachers because they are presented with the option of taking paid sick leave (to be followed by unpaid sick leave if their sick leave runs out) as an alternative to unpaid maternity leave, to be followed by parental leave. Thus pregnant teachers are treated exactly the same as any other teacher with the exception that they also have offered to them unpaid maternity leave which they can take as a matter of right for up to two and one-half years. It contends therefore that the choice between the paid sick leave and unpaid maternity leave under these circumstances is not violative of the PPD.

The United States however contends that all other forms of leave offered, other than maternity leave, allow a teacher to take sick leave in combination with that leave and that District 230 does not allow natural mothers to take parental leave.[1] Therefore District 230 does illegally discriminate.

The leave policy of District 230 is set out in Article VI of the CBAs.[2] ¶ 6.01 provides for sick leave. A teacher is allowed 12 sick leave days per year and they are allowed to accumulate on an unlimited basis. ¶ 6.0158 provides as follows:

A teacher not requesting maternity leave may utilize accumulative sick leave under the following conditions:

(1) A pregnant teacher shall notify her principal in writing when her pregnancy is confirmed in order to be eligible to utilize accumulated sick leave.

(2) Such accumulated sick leave shall be allowed during the time period that the teacher's physician determines, in writing, that she is unable to perform her teaching duties as a result of the pregnancy or delivery of the child. The teacher shall submit periodic statements

from her physician attesting to the condition of her health. If a teacher shall have exhausted her accumulated sick leave prior to her ability to return to work, she will be granted an unpaid leave of absence for such period.

(3) Failure of the teacher to return after her physician determines she is medically able to perform her teaching duties shall be considered as having waived all rights to continued employment in the District.

¶ 6.04 "MATERNITY LEAVE" provides as follows:

6.041 A pregnant teacher shall notify her principal in writing when her pregnancy is confirmed in order to be eligible to receive a maternity leave of absence.

6.042 A teacher shall not be required to resign or take a leave of absence because of pregnancy. Said teacher, however, may, in writing, request a leave of absence without pay. A maternity leave of absence may begin when the pregnant teacher desires, but not later than when she is unable to perform her duties satisfactorily. A maternity leave of absence for a period longer than one semester shall end on the day prior to the beginning of any school year up to and including 5 school semesters after the maternity leave of absence begins. The Superintendent may, however, permit a maternity leave of absence to end on the day prior to the beginning of a school semester up to and including 4 school semesters after the maternity leave of absence begins.

However, sick leave shall not be utilized by the teacher in conjunction with the maternity leave. A teacher wishing to utilize accumulated sick leave shall be allowed to do so for the period that her physician determines that she is unable to perform her teaching duties as a result of the pregnancy and/or delivery of the child. The teacher shall submit periodic statements from her physician at-

---

1. The CBA specifically provides that no teacher is eligible for sick leave while the teacher is on other leave.

2. The best the Court can make out is that the language in Article VI is the same in both the 1982–84 and the 1884–1987 CBAs. Neither party has called any differences to the Court's attention.

testing to the condition of her health. If a teacher shall have exhausted accumulated sick leave, she shall be granted a leave of absence without pay during such period. Failure of the teacher to return to duty after her physician determines she is medically able to perform her teaching duties shall be treated as a violation of the provisions of this Agreement and the teacher shall be considered as having waived all rights to continued employment.

6.043 A statement from the teacher's doctor or a doctor of the Board's choice, if the Board desires, may be required to establish the period of pregnancy and/or the teacher's ability to perform or resume her duties.

6.044 Failure of the teacher to follow the policies outlined above may result in termination of the teacher's service at the close of school the week in which it is discovered that she has not followed the rules and regulations governing maternity leave.

6.045 A teacher may request a parental leave of absence without pay to rear his children. A teacher who adopts a child may request a parental leave of absence without pay to rear his/her adopted child. A teacher on maternity or parental leave shall not accept employment outside his/her home during the hours he/she otherwise would be teaching, except to be employed as a substitute for District 230, or except where the teacher is denied her initial request that her maternity leave of absence should end on the day prior to the beginning of a school semester. A teacher who requests parental leave of absence shall follow the procedures, where applicable, in this Section 6.04.

Both parties cite *Scherr v. Woodland School Consol. Dist. No 50*, 867 F.2d 974 (7th Cir.1988) in support of their respective positions. *Scherr*, which was actually two suits consolidated, involved the maternity and sick leave policies of Leyden Community High School District and the Woodland School Community Consolidated District. Both school districts provided teachers with three types of leave: (1) paid sick leave—

with continuing unpaid sick leave for extended illness, (2) unpaid maternity leave and (3) an unpaid general leave of absence. In both districts a pregnant teacher can choose only one of the three forms of leave. The unpaid maternity leave is provided as a right. Leyden had a written policy prohibiting a teacher from combining paid sick leave for the period of disability due to pregnancy and childbirth with unpaid maternity leave, but no written policy prohibiting the combination of paid sick leave with a general leave of absence. However general leaves of absence at Leyden must begin at the commencement of the school year and a teacher was not entitled to take sick leave prior to commencement of the school year.

The situation was similar at Woodland District. A no combination policy existed for maternity leave but no such restriction was written in to the CBA for nondisability leave. However the District claimed that forbidding such combinations is an unwritten policy.

The Seventh Circuit held in favor of Leyden on the basis that pregnant and non pregnant teachers were treated similarly: none could use sick leave in combination with other leaves. It reversed and remanded the Woodland case on the ground that there existed a material question of fact as to whether Woodland did in fact have an unwritten policy against combination. In so holding the Court expressly rejected the argument of the dissent (and one of District 230's arguments here) that maternity leave could be viewed as a "gratuitous 'extra option'" since such leave was not available to non-pregnant teachers. The majority argued that such a view failed to recognize that a similar general leave of absence was available to all teachers.

Therefore the gist of the *Scherr* holding is that pregnant teachers must be allowed to combine leaves if non-pregnant teachers are allowed to do so.

Teachers at District 230 are allowed to take a variety of leaves, including overseas teaching (¶ 6.05), Exchange teaching (¶ 6.06), Educational (¶ 6.07), and "Other",

defined as "for reasons not noted heretofore in this Agreement when [the Board] deems the leave to be of benefit to the professional and educational program of the District" (¶ 6.09).[3] There is no express provision prohibiting combination of sick leave with any of these other leaves similar to that contained in ¶ 6.042. There likewise is no express provision providing that these other forms of leave must begin at the commencement of the school year such as the Leyden CBA required. However, unlike maternity leave, each of these leaves is discretionary with the Board. Although District 230 contends that the Board had a policy similar to Leyden's of only approving these other leaves at the beginning of the School year, the United States has submitted some evidence that the Board did in fact authorize some leaves to commence after commencement of the school year. Thus a teacher going on leave for the second semester was eligible for sick leave in the first semester.

Thus on the surface the District 230 leave policy appears to be more similar to Woodland's than Leyden's.

However there is a major difference between the District 230 CBA and those of either Woodland or Leyden. District 230 provided a discretionary parental leave without pay in order for a teacher to rear children. The specific provision (¶ 6.045) appears to be limited to fathers ("A teacher may request parental leave of absence without pay to rear *his* children") (emphasis supplied) but District 230 claims that it is also available to mothers and the use of the exclusive male pronoun was a typographical error ("... to rear his [sic]/her children.")

This is an important point. If in fact District 230 pregnant teachers could combine paid sick leave with parental leave, like non-pregnant teachers, then District 230 would be treating pregnant and non-pregnant teachers alike with the exception

that pregnant teachers would have an additional option, maternity leave, open to them that was not available to non-pregnant teachers. Thus maternity leave would indeed be a gratuitous benefit bestowed on pregnant teachers not available to non-pregnant teachers. This would distinguish the leave provisions of the Woodland CBA because a pregnant teacher could have paid medical leave, followed by unpaid medical leave, followed by parental leave.[4]

However, the parties hotly dispute whether a pregnant teacher, who takes medical leave in lieu of maternity leave, qualifies for parental leave. As noted previously the parental leave provision uses the masculine pronoun for a natural child but a "his/her" combination for "adopted children". (¶ 6.045) Normal rules of statutory construction therefore would limit parental leave to fathers of a natural child. Also subparagraph (3) of ¶ 6.0158 appears to require a mother to return to work as soon as she is medically able to do so. Thus it could be inferred that no further leave is permissible.

However if the actual policy of a school district differs from its written policy, such actual policy can still be considered by the Court. *Scherr,* 867 F.2d at 981 n. 5. District 230 claims that the personnel records indicate that several of its pregnant teachers applied for and were granted parental leave to be taken in combination with medical leave. On the other hand the United States filed affidavits of some of District 230's teachers who contend that they were advised by the superintendent that their only choices were maternity leave or sick leave. Thus a classic issue of fact is presented: whether District 230 had a policy of interpreting ¶ 6.045 to allow pregnant teachers who opted for paid medical leave to qualify for and take parental leave.

The district also claims that it had a policy of only authorizing extended, non-

---

3. The CBA recognizes certain other minor leaves which are limited to a few days, such as bereavement, personal business, and attendance at professional meetings. (¶¶ 6.02, 6.03, and 6.12). None of the parties contend that these minor leaves are relevant to this inquiry.

4. This would also constitute proper use of the English language. If medical leave is used through birth, the leave following birth can hardly be termed "maternity" leave.

maternity leaves to begin and end with the school year or term. However if an extended leave began with the first day of the second semester then a teacher could, unlike Leyden teachers, take sick leave in combination with an extended leave. The parties have strongly disagreed when extended leaves can commence. District 230 correctly points out that short term leave cannot be compared with extended leave. If District 230 does have a policy prohibiting extended leave from commencing during the school year then the ruling regarding the leave policy of the Leyden District would apply. *Scherr,* 867 F.2d at 983. Therefore a second issue of fact is presented: does District 230 have a policy of not allowing extended leaves to commence other than at the beginning of the school year.

## THE SICK LEAVE BANK PROBLEM

 The final issue raised by the United States concerns the denial of sick leave bank days for maternity benefits. ¶ 6.0154 provides as follows:

> "Withdrawals from the sickleave bank shall be available only for a teacher's prolonged and extended catastrophic illness and shall not be available for maternity benefits, elective surgery, illness of family or household members, and/or death of family or household members."

District 230 has taken the position that only normal maternity and child birth are excluded; not situations where complications arise such as extraordinary medical problems related to pregnancy. "A normal birth would not be considered a catastrophic illness," it says. A letter of understanding entered into between the teacher's union and the District 230 expressly confirms that sick leave bank is available to pregnant teachers on the same basis as all other teachers. In other words if a pregnant teacher has a prolonged and extended catastrophic illness, she is eligible for sick leave bank provisions. If she is not medically disabled from resuming her teaching duties she would not be eligible. The United States takes the position that sick leave bank provisions must be made available for maternity leave itself regardless of whether the pregnant teacher is disabled or merely wishes to remain home during her pregnancy. It is clear that the positions of the parties present questions of fact. What is the actual policy of the District as to the definition of "catastrophic illness". For example, as suggested by the United States does a simple gall bladder surgery comply? What illnesses do not comply? These issues require trial.

Therefore the cross motions for summary judgment are denied.

IT IS SO ORDERED.